## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

v.

TYREE L. GARRETT,

                Defendant.

Case No. 24-CR-183-JPS

**ORDER**

### 1.    INTRODUCTION

In September 2024, a grand jury returned an Indictment charging Defendant Tyree L. Garrett ("Defendant") with knowing possession of a firearm as a felon. ECF No. 1. Defendant moves to suppress the fruits of an October 2023 search of 7658 N. 78th Street, Apt. #3 in Milwaukee (the "Residence") on the ground that police, who were responding to a probation-issued apprehension request, lacked reasonable suspicion for his arrest and search, and that the firearm subsequently found in the search of the Residence was fruit of the poisonous tree. ECF No. 19.

Magistrate Judge Stephen C. Dries recommends that the motion be granted in its entirety. ECF No. 24. The Government has objected to that recommendation, ECF No. 26; the Defendant has responded to the objections, ECF No. 27; and the Government has replied to that response, ECF No. 28. The recommendation is accordingly ripe for the Court's review.

For the reasons discussed herein, the Court concludes that the apprehension request was supported by reasonable suspicion because the anonymous tip upon which it was based contained sufficient indicia of reliability, and that this gave police a legitimate basis to arrest Defendant.

The firearm discovered in the subsequent search of the Residence therefore need not be suppressed. The Court accordingly overrules Magistrate Judge Dries's report and recommendation and will deny Defendant's motion to suppress.[1]

## 2. RELEVANT FACTS

The parties agree on these uncontested facts. In October 2023, Wisconsin Department of Corrections ("DOC") agent, Alexander Paque ("Paque"), was supervising Defendant while he was on state supervised release. ECF No. 19 at 2. During this time, Defendant was electronically monitored. *Id.* Defendant had convictions for robbery with threat of force and armed robbery with threat of force (2003), burglary (2013), and maintaining a place for drug trafficking (2019). *Id.*

On October 10, 2023, Paque received the following text message directly from an anonymous tipster:

> Tyree Garret (doc 267261) he lives with his brother, Lavell, on N 78th. Both guys are on probation/parole. Tyree possesses a handgun. There is regularly drugs in the apt too, especially weed, but maybe narcotics as well. Tyree works M-F 6-230 at ETE Reman, no idea if Lavelle is employed. Your dept has their work cut out for them with these two, especially because Tyree insists he's go back to Minnesota when he gets that monitor off next week.

*Id.* at 3. Paque tried to call the tipster, but the call went to voicemail. *Id.* There is no other information in the record regarding the identity of the tipster. *Id.*

At the time that he received the tip, Paque knew that Defendant lived with his brother, Lavelle, on N. 78th Street; that both Defendant and his

---

[1]The Court also therefore grants the Government's motion for a speedy trial finding. ECF No. 32.

brother were on supervision; that Defendant's DOC number was, in fact, 267261; that Defendant worked at ETE Reman; and that Defendant had previously fled to Minnesota while on supervision. *Id.* Paque obtained permission from his supervisors to issue an apprehension request, citing "Alleged possession of a Firearm" as the reason for the request. *Id.*

Later that afternoon, law enforcement went to the Residence, knocked on the door, and arrested Defendant after he opened the door. *Id.* at 4. During a search incident to arrest, law enforcement found a baggie of suspected drugs in Defendant's pants pocket. *Id.* They then searched his apartment under the auspices of Act 79.[2] *Id.* Inside a bedroom with identifiers for Defendant, law enforcement found a firearm with ammunition. *Id.*

## 3. STANDARD OF REVIEW

When reviewing a magistrate's recommendation, the Court is obliged to analyze de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The Court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id*. The Court's review encompasses both the magistrate's legal analysis and factual findings. *Id*.; *see also* Fed. R. Crim. P. 59(b).

---

[2]"Act 79 applies to allow a search of those on a specified supervision status 'if the officer reasonably suspects that the person is committing, is about to commit, or has committed a crime or a violation of a condition' of supervision." *See United States v. Slater*, No. 21-CR-106-PP, 2022 WL 558097, at *80 (E.D. Wis. Feb. 24, 2022) (quoting *State v. Anderson*, 935 N.W.2d 285, ¶ 31 n.10 (Wis. 2019)).

**4.     LAW AND ANALYSIS**

**4.1     Motion to Suppress**

Probation agents may issue apprehension requests to investigate alleged violations of rules or conditions of supervision. WIS. ADMIN. CODE DOC § 328.27(2)(a). The Fourth Amendment prohibits unreasonable searches and seizures, but probationers have a "significantly diminished" expectation of privacy. *United States v. Caya*, 956 F.3d 498, 502 (7th Cir. 2020) (quoting *United States v. Knights*, 534 U.S. 112, 119–20 (2001)). This is so because "[i]nherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled,'" *United States v. Knights*, 534 U.S. 112, 119 (2001) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (internal quotation marks omitted)), and the liberty that a probationer does possess is "conditioned on . . . adhering to the conditions of probation." *Wagner v. State*, 277 N.W.2d 849, 852 (Wis. 1979) (citing *State v. Evans*, 252 N.W.2d 664, 666 (Wis. 1977)). Thus, probation agents only need "reasonable suspicion that the probationer violated a probation term to issue an apprehension request." *Alston v. City of Madison*, 853 F.3d 901, 911 (7th Cir. 2017) (citing *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003)).

Reasonable suspicion is a relatively low standard to meet. It requires "more than a hunch but less than probable cause and 'considerably less than preponderance of the evidence.'" *United States v. Richmond*, 924 F.3d 404, 411 (7th Cir. 2019) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). It "can be established with information . . . that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990).

Generally, an anonymous tip is insufficient to establish reasonable suspicion. *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (quoting *White*, 496 U.S. at 329). However, a "suitably corroborated" anonymous tip may provide

Case 2:24-cr-00183-JPS     Filed 05/30/25     Page 4 of 16     Document 33

reasonable suspicion when it exhibits "sufficient indicia of reliability." *Id*. (quoting *White*, 496 U.S. at 327). Moreover, "the traditional indicia of reliability for tips play a diminished role when it comes to parole and probation searches." *United States v. Trujillo*, 404 F.3d 1238, 1245 (10th Cir. 2005); *see also Griffin*, 483 U.S. at 879 ("In some cases—especially those involving . . . illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene . . . .").

"In determining whether a tip has furnished 'enough verifiable information to provide reasonable suspicion, courts examine the amount of information given, the degree of reliability, and the amount of . . . corroboration.'" *United States v. Ganser*, 315 F.3d 839, 843 (7th Cir. 2003) (quoting *United States v. Price*, 184 F.3d 637, 640 (7th Cir. 1999)). Anonymous tips may also exhibit sufficient indicia of reliability when they provide "predictive information" by which an officer or probation agent can "test the [tipster's] knowledge or credibility." *J.L.*, 529 U.S. at 271. The tip must reliably assert a crime, not merely identify a determinate person. *Id*. at 272 (citation omitted). The determination of whether an anonymous tip exhibits sufficient indicia of reliability is evaluated under the totality of the circumstances. *Navarette v. California*, 572 U.S. 393, 397 (2014) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

In *Navarette*, the Supreme Court found that a civilian's anonymous tip about another civilian bore sufficient indicia of reliability because the tipster (1) was an eyewitness (2) who made a contemporaneous report and (3) used the 911 system, which is traceable. *Id*. at 399–400. While those three factors established the requisite indicia of reliability in that case, "[t]he [Supreme] Court did not hold, as a general rule, that any anonymous tip

must satisfy the three factors . . . ." *United States v. Shelton*, No. 22-CR-162-PP, 2023 WL 4928135, at *25 (E.D. Wis. Aug. 2, 2023).

More broadly, an anonymous tip is more likely to exhibit sufficient indicia of reliability where it demonstrates the tipster's familiarity with the defendant's affairs, provides sufficient corroborated details, and establishes that illegal activity may be afoot. *United States v. Swinney*, 463 F. Supp. 3d 851, 855–57 (N.D. Ill. 2020), *aff'd*, 28 F.4th 864 (7th Cir. 2022). In *Swinney*, an anonymous tipster called 911 and reported that a man had a firearm at a liquor store, contemporaneously described his movements, and provided specific details about what the suspect was wearing. *Id*. at 855–56. There, in what the court characterized as "a close call," the court held that the anonymous tip had sufficient indicia of reliability because it demonstrated the tipster's familiarity by providing a contemporaneous "play-by-play" account; included sufficient detail as to the defendant's exact articles of clothing and location, which the officers could corroborate; disclosed the caller's location; and contained the context necessary to establish that illegal conduct (bringing a firearm into a liquor store) was afoot. *Id*. at 855–57. Although officers did not conduct much independent investigation of the claims made by the tipster, the court held that the officers had more "leeway" because the call "reported an ongoing emergency." *Id*. at 858 (noting that, as a general matter, an independent investigation by police can make an anonymous tip more reliable (quoting *United States v. Williams*, 731 F.3d 678, 685 (7th Cir. 2013) and citing *United States v. Wooden*, 551 F.3d 647, 650 (7th Cir. 2008))).

Importantly, the *Swinney* court noted that, had the anonymous tipster "simply reported that there was a man in a black coat and hat with

Case 2:24-cr-00183-JPS    Filed 05/30/25    Page 6 of 16    Document 33

a gun at the corner of 79th and Halsted and hung up," reasonable suspicion would likely not have been established. *Id*. at 855.

In the specific context of anonymous tips made to probation agents about their supervisees, courts have identified additional factors relevant to establishing the credibility of such tips. These factors include the tipster's ability to provide information that the supervising agent could corroborate and information that aligns with the agent's knowledge of the probationer's criminal history or past rule violations. *See Slater*, 2022 WL 558097, at *21; *Anderson*, 935 N.W.2d, ¶¶ 50–51; *State v. Candler*, 895 N.W.2d 103, ¶ 16 (Wis. Ct. App. 2016) (Table); *United States v. Lewis*, 920 F.3d 483, 493 (7th Cir. 2019) ("Criminal histories can support reasonable suspicion." (citing *United States v. Sanford*, 806 F.3d 954, 959 (7th Cir. 2015))). "The agency . . . must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances." *Griffin*, 483 U.S. at 879.

Defendant argues that the anonymous tip upon which Paque based the apprehension request lacked sufficient indicia of reliability and therefore that Defendant's arrest and search, and the subsequent search of the Residence, violated this Fourth Amendment rights. *See generally* ECF No. 19; ECF No. 27 at 1. The Government responds that, under the totality of the circumstances, the anonymous tip established reasonable suspicion because it was sufficiently detailed and provided various pieces of information that Paque was able to corroborate. ECF No. 20 at 5–7; ECF No. 26 at 6–14. In the alternative, the Government argues that the good faith exception applies. ECF No. 20 at 11–12; ECF No. 26 at 14–17.

There are various factors on both sides of the reasonable suspicion scale here. Magistrate Judge Dries correctly noted that none of the *Navarette*

factors are present. ECF No. 24 at 6–7. The anonymous tip did not demonstrate that the tipster possessed eyewitness knowledge, the tipster did not clearly report conduct contemporaneously, and the tip was not made through the 911 system. *Id*. The tip also did not include Defendant's specific address or explain how the tipster knew Defendant or the information in the tip. *Id*.[3] However, while these factors undoubtedly weigh against a finding of reasonable suspicion, they are not dispositive, particularly in the distinct circumstances presented here. *Shelton*, 2023 WL 4928135, at \*25. The *Navarette* Court analyzed the reasonable suspicion standard in the context of a civilian 911 call made about another civilian about whom neither the caller nor the responder had any preexisting knowledge. *See generally* 572 U.S. 393. Under the totality of the circumstances in that specific factual context, the presence of those three factors—plus the fact that officers were responding to an "ongoing emergency"—demonstrated reasonable suspicion. *Id*.; *Swinney*, 463 F. Supp. 3d at 858 (quoting *Williams*, 731 F.3d at 685). Importantly, that factual context is completely distinct from that at issue here, so analysis of additional factors is necessary.

Other relevant factors are present in this case that tip the scales, albeit barely, in favor of reasonable suspicion. The Court is satisfied that the presence of these factors, considered together, provided more than a mere "hunch" of criminal activity. *Richmond*, 924 F.3d at 411 (quoting *Wardlow*, 528 U.S. at 123).

---

[3]The tip also did not suggest that any emergency was underway such that Paque and police could act on it "without assessing whether [the tip] [wa]s reliable." *Swinney*, 28 F.4th at 869; *see also United States v. Hicks,* 531 F.3d 555, 559 (7th Cir. 2008)).

Though it is a close call, the tip that Paque received could not be described as barebones or lacking any indicia of reliability. The tip included details that demonstrated the tipster's familiarity with Defendant and his affairs, by which Paque could evaluate the tipster's credibility. The tipster correctly identified Defendant's full name, his DOC number, his status as a supervisee, his employer, the fact that he was on electronic monitoring, and that he resided with his brother on a particular street, all of which Paque could immediately corroborate. ECF No. 19 at 3. Although some of this information could have been available to the tipster online or otherwise "easily obtained by any observer," *United States v. Nelson*, 284 F.3d 472, 480 (3d Cir. 2002), this corroborated information began to establish the tipster's credibility and knowledge. "In *J.L.*, in contrast, the only information provided identified a man standing in a particular location, dressed in certain clothes, and carrying a gun, *all* of which was information that was readily observable by anyone, and none of which would imply any special knowledge on the part of the observer . . . ." *Id.* at 484 (emphasis added).

The tipster also identified Defendant's work schedule by weekdays and hours, which was predictive information that provided Paque an opportunity to "test the informant's knowledge." *J.L.*, 529 U.S. at 271. Paque could confirm this information by comparing Defendant's location from his electronic monitoring to the schedule the tipster provided. ECF No. 20 at 7.[4] It does not appear that this information was publicly searchable, *see id.*, so Paque could fairly assume that the tipster had some degree of familiarity with Defendant. This bolsters the tipster's credibility.

---

[4]Defendant did not challenge this assertion in his reply. ECF No. 23.

Furthermore, and although the parties did not discuss this factor, the Court considers it relevant that the tipster knew that Paque was Defendant's supervising agent and texted Paque directly. ECF No. 19 at 3. It seems unlikely that the identity and contact information of a probationer's supervising agent would be easily observable to a member of the general public. That the tipster texted Defendant's supervising agent directly therefore suggests additional familiarity with Defendant and his activities. *See United States v. Bell*, No. 1:20CR5, 2020 U.S. Dist. LEXIS 181414, at *13–14 (N.D. Ohio Sept. 30, 2020) ("[The informant] calling Officer Gaul directly reveals that [he] knew that Defendant was under supervision."); *see also United States v. Noel*, 659 F. App'x 284, 288 (6th Cir. 2016) (noting that the fact that "the [anonymous] tipster called a parole agent directly" and accordingly "likely knew that [the defendant] was on parole" supported a finding of reasonable suspicion (citing *United States v. Yeager*, 351 F. App'x 718, 720 (3d Cir. 2009))).

The tip also mentioned that Defendant was planning to go back to Minnesota after getting off monitoring. This also contributes to the tip's reliability and the tipster's credibility because Paque knew that Defendant had previously absconded to Minnesota and had ties to the state. ECF No. 20 at 7–8. This portion of the tip demonstrated the tipster's familiarity with Defendant's affairs, reasonably allowed Paque to infer that "the tipster had inside knowledge about the suspect," *J.L.*, 529 U.S. at 270, and gave Paque "reason to think that the [tipster] . . . was telling the truth." *Navarette*, 572 U.S. at 399. Furthermore, the fact that the tipster used the language "Tyree insists" suggests additional familiarity with and personal knowledge of Defendant's intention to return to Minnesota, as well as some degree of proximity in time given the use of the present tense.

Finally, the tip reliably advised that criminal activity was afoot, particularly when considered within the context of Paque's familiarity with Defendant's criminal history and performance on supervision. In the months preceding this incident, Defendant was placed on GPS monitoring after several violations of his extended supervision, including fleeing to Minnesota and a positive THC drug test. ECF No. 20 at 8. As his supervising agent, Paque also presumably knew that Defendant had a prior conviction for maintaining a place for drug trafficking. *See* ECF No. 24 at 2. Thus, the tipster's assertion that there were "regularly drugs in the [Defendant's] apt, . . . especially weed, but maybe narcotics as well" aligned with Paque's familiarity with Defendant's criminal history and rule violations.[5] *Id.*; *see also United States v. Ball*, 282 F. App'x 126, 128 (3d Cir. 2008) ("[The defendant's] failed . . . drug tests. . . combined with the anonymous tip that he sold drugs out of his residence[] gave his parole officers reasonable suspicion to search his person . . . and residence.").[6]

The tip's reference to drugs inside the Residence also suggested "that the tipster ha[d] knowledge of concealed criminal activity" rather than merely enabling the tip's recipient to "identify a determinate person." *J.L.*, 529 U.S. at 272; *see also United States v. Riley*, 706 F. App'x 956, 961 (11th Cir. 2017) (concluding that probation officers had reasonable suspicion to search

---

[5]It also aligned with the reality that probationers commonly recidivate. *See United States v. McGill*, 8 F.4th 617, 623 (7th Cir. 2021) (quoting *Knights*, 534 U.S. at 120); *Griffin*, 438 U.S. at 880 (acknowledging the "assumption of the institution of probation that the probationer . . . is more likely than the ordinary citizen to violate the law").

[6]It would be different if the tip had asserted that Defendant was committing, for example, securities fraud or some other crime that Paque would have no reason to believe Defendant would be involved in given his known history.

probationer's residence where "the probation officers were aware of the following: (1) [the defendant] had a prior cocaine-related conviction, (2) the anonymous tip indicated that [the defendant] was selling drugs from the house, (3) [the defendant]'s community control prohibited him from possessing any drugs or visiting places where drugs were sold or used, (4) the anonymous tip indicated that [the defendant] was driving a white Audi, and (5) [the defendant] was placed on community control because he had been driving without a license" (citing *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005) (footnote omitted))).

The same is true with respect to the tipster's assertion that Defendant "possesses a handgun." ECF No. 24 at 2. Defendant argues that the tip was not reliable in its assertion of illegality because it "provided no detail about [the] gun [that it] claimed [that the defendant] possessed." ECF No. 23 at 1. It is true that the tip provided no specific information about the firearm apart from describing it as a "handgun," but the lack of detail as to the firearm is ultimately immaterial in this case. As a convicted felon, Defendant could not possess *any* firearm, irrespective of kind—"[h]ere, the mere possession of a firearm is all that is required to establish the commission of the offense." *United States v. Searcy*, 664 F.3d 1119, 1123 (7th Cir. 2011) (footnote omitted). Accordingly, even the undetailed assertion that Defendant "possesses a handgun," in light of the fact that Defendant was a felon on supervision, was sufficient to suggest that criminal activity was afoot.

For all these reasons, the Court is satisfied that Paque had reasonable suspicion to issue the apprehension request and that, by extension, officers were justified in acting on it.

### 4.2 Good Faith Exception

Even if the tip did not meet the low reasonable suspicion standard, the Court concludes that suppression is not warranted. "[T]he exclusionary rule does not apply automatically when an individual's Fourth Amendment rights are violated." *McGill*, 8 F.4th at 624 (citing *Utah v. Strieff*, 579 U.S. 232, 237 (2016)). It applies only "where '[t]he benefits of deterrence . . . outweigh the costs.'" *Id.* (quoting *Herring v. United States*, 555 U.S. 135, 141 (2009)). "When law enforcement acts 'with an objectively reasonable good-faith belief that their conduct is lawful . . . the deterrence rationale loses much of its force,' and the exclusionary rule does not apply." *Id.* (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).

As a threshold matter, the report and recommendation raises the question of whether the good faith exception even applies in the reasonable suspicion context. ECF No. 24 at 11 (citing *United States v. Bohman*, 683 F.3d 861, 866–67 (7th Cir. 2012) ("[T]he government doesn't point to a single case where the good faith exception applied to a lack of reasonable suspicion[,] and we don't think it does.")). The Seventh Circuit's assertion in *Bohman* that it "do[esn]'t think" that the "good faith exception applie[s] to a lack of reasonable suspicion" is extremely difficult, if not impossible, to reconcile with its later explicit application of the good faith exception in the reasonable suspicion/probationer context in *McGill*. 8 F.4th at 624 (concluding that officer's seizure of probationer's cell phone was supported by reasonable suspicion and that officer in any event acted with objective good faith). Evaluation of out-of-circuit authority does not satisfactorily clarify matters. *See, e.g., United States v. Lopez-Valdez*, 178 F.3d 282, 289 n.6 (5th Cir. 1999) ("[A]pplication of the good-faith exception to reasonable suspicion determinations has always involved circumstances extrinsic to

the government's personal observations at the time of the stop." (quoting *United States v. Nichols*, 142 F.3d 857, 860 n.1 (5th Cir. 1998))); *United States v. Falzone*, No. 8:23-cr-351-VM-SPF, 2024 U.S. Dist. LEXIS 154277, at *4 (M.D. Fla. Aug. 28, 2024) (concluding in the context of a border search that "[e]ven if reasonable suspicion did not exist, the good faith exception would apply"); *but see United States v. Ringleb*, No. 22-0190 JB, 2025 U.S. Dist. LEXIS 75030, at *153–54 (Dist. N. M. Apr. 18, 2025) (noting that "the good-faith exception is ordinarily limited to situations when the police officer reasonably relied upon the judgment of a neutral third party" and that "[t]his common application is inapposite here, where there is no search warrant" (quoting *United States v. Herrera*, 444 F.3d 1238, 1249 (10th Cir. 2006))).

Assuming arguendo that the good faith exception does apply in this context, the Court sees no reason to believe that Paque's and the officers' actions in this case were not taken "with an objectively reasonable good-faith belief that their conduct [wa]s lawful." *McGill*, 8 F.4th at 624 (quoting *Davis*, 564 U.S. at 238). As discussed *supra* Section 4.1, the tip that Paque received was not barebones and included various pieces of information about Defendant and his activities that would not have been publicly accessible, which reasonably led Paque to believe that he could deem it credible. The tip also aligned with what Paque knew about Defendant, his criminal history, and his experience on supervision. Paque also sought and was granted supervisor approval for the apprehension request. It does not appear that there was anything in the tip or about the circumstances of its receipt that should have prompted Paque or officers to question its veracity—for example, it provided no information about Defendant that Paque knew to be false. Given all the circumstances, Paque could fairly

believe that he had more than a mere "hunch" of criminal activity on Defendant's part. *Richmond*, 924 F.3d at 411 (quoting *Wardlow*, 528 U.S. at 123).

That being the case, there is nothing about Paque's conduct that strikes the Court as warranting deterrence. The same is true as to the officers who acted on the apprehension request. The Court accordingly concludes that even if the apprehension request and subsequent arrest of Defendant were unsupported by reasonable suspicion, Paque and the officers acted in good faith, and therefore suppression is not warranted.

**5.     CONCLUSION**

For all these reasons, the Court will overrule Magistrate Judge Dries' report and recommendation, deny Defendant's motion to suppress, and grant the Government's motion for a speedy trial finding. The Court will accordingly enter a trial scheduling order in this matter and exclude the intervening time as appropriate.

Accordingly,

**IT IS ORDERED** that Magistrate Judge Stephen C. Dries' report and recommendation, ECF No. 24, be and the same is hereby **OVERRULED**;

**IT IS FURTHER ORDERED** that the Government's objections to the report and recommendation, ECF No. 26, be and the same are hereby **SUSTAINED**;

**IT IS FURTHER ORDERED** that Defendant Tyree Garrett's motion to suppress, ECF No. 19, be and the  same is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Government's motion for a speedy trial finding, ECF No. 32, be and the same is hereby **GRANTED**; the period from March 31, 2025 to May 30, 2025 is excluded under the Speedy Trial Act.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2025.

BY THE COURT:

_____

J. P. Stadtmueller

U.S. District Judge